IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF NEW JERSEY

| | |
|---|---|
| ESTATE OF BRANDON CASIMIR ex rel; ESTATE OF CORNELL HALL/DIXON ex rel; EMER SHYAAM M.K. EL; EMER KERNEL C. EL,<br><br>                    Plaintiffs,<br><br>     v.<br><br>STATE OF NEW JERSEY,<br><br>                    Defendant. | Civil Action No. 09-4004<br><br>**OPINION** |

**SIMANDLE**, District Judge:

This matter comes before the Court upon Plaintiffs' joint submission of notice ("Notice"), Docket Entry No. 1, seeking removal of a certain state criminal proceeding to this District. For the reasons expressed below, filing of the Notice will be denied and the matter will be remanded back to the Superior Court of New Jersey, Law Division, Burlington County.

I.    **BACKGROUND**

A.    **Plaintiffs' Previous Litigations**

On July 30, 2009, this Court issued an order ("July Order") and accompanying opinion ("July Opinion") ruling on the nineteen litigations, collectively referred to as the "Marrakush Cases," that were initiated by Brandon Casimir ("Casimir") and his acquaintances in this District during the eight weeks spanning from May 22 to July 20, 2009.  See Marrakush Soc'y v. N.J. State Police ("Marrakush Cases"), 2009 U.S. Dist. LEXIS 68057, at *50-

134 (D.N.J. July 30, 2009) (discussing Plaintiffs' submissions made in Civil Actions Nos. 09-2518 (JBS), 09-2519 (JBS), 09-2520 (JBS), 09-2521 (JBS), 09-2522 (JBS), 09-3371 (JBS), 09-3372 (JBS), 09-3392 (JBS), 09-3441 (JBS), 09-3442 (JBS), 09-3502 (JBS), 09-3503 (JBS), 09-3504 (JBS), 09-3505 (JBS), 09-3506 (JBS), 09-3507 (JBS), 09-3589 (JBS), 09-3590 (JBS) and 09-3591 (JBS)).  In its July Opinion, this Court also took judicial notice of six -- by then, already terminated -- litigations initiated by Casimir and/or his acquaintances in the United States District Courts for the Southern District of Florida, see Marrakush Cases, 2009 U.S. Dist. LEXIS 68057, at *26-45, as well as of the litigations commenced by Plaintiffs in the United States District Court for the District of Delaware, El v. State of Delaware, 09-00144 (SLR) (D. Del.) ("Delaware I Action," where the Plaintiffs sought removal of a state criminal proceeding to the District of Delaware), and in the United States District Court for the Eastern District of New York ("New York Action").[1] See id. at 45-50.

---

[1]  The Court clarified that the July Opinion's discussion of Plaintiffs' litigation practices reflected the Court's research as of July 20, 2009, see id. at 2, n.3, and that the Court could "not rule out the possibility that [Plaintiffs] initiated other litigations [that] could have escaped the Court's attention." Id. at 21, n.13.  To that extent, the Court's impression that Plaintiffs proved correct since, on July 22, 2009, Judge Robinson of the United States District Court for the District of Delaware entered her decision with regard to Plaintiffs' other federal litigation, Thompson v. Delaware, 09-00446 (SLR) (D. Del.) ("Delaware II Action"), where Plaintiffs sought removal of another state criminal proceeding to the District of Delaware.

The exhaustive discussion of Plaintiffs' litigation
practices provided in the July Opinion need not be replicated
here.  Plaintiffs are referred to the original ruling entered in
the Marrakush Cases.  For the purposes of the matter at hand, it
shall suffice to point out that the July Opinion extensively
explained to Plaintiffs that: (a) a juridical entity cannot
appear in a legal matter either pro se or as an in forma pauperis
litigant; (b) a natural person seeking to litigate an action in
forma pauperis must submit a statutorily required affidavit of
poverty and, if the litigant is incarcerated, the litigant's six-
month prison account statement; (c) a litigant, either juridical
or natural, must actually exist in order to have standing to sue;
(d) there are strict requirements associated with one's right to
brings claims jus tertii; (e) a litigant commencing a proceeding
in this District must, in accordance with the Local Civil Rules,
indicate both the litigant's legal name and his/her street and
post office address (or, if the litigant is not a natural person,
the address of its principal place of business); and (f)
Plaintiffs' deliberate ignorance of prior legal guidance provided
to Plaintiffs by the federal judiciary constitutes an abusive or

sham litigation practice.[2]  See Marrakush Cases, 2009 U.S. Dist. LEXIS 68057, at *34-36, 88-104, 131-34.

**B.   Plaintiffs' Instant Submission**

Plaintiffs' submission at hand consists of three documents:

(a)   a civil cover sheet, executed by Casimir under his alias "M.K. El,"see Marrakush Cases, 2009 U.S. Dist. LEXIS 68057, at *3-5 and nn. 1-2 (describing Plaintiffs' alias practices), and listing the "estate" of Casimir as a co-Plaintiff[3];

(b)   an application to proceed in this matter in forma pauperis executed by Cornell Hall ("Hall"), asserting that Hall is also known as Cornell Dixon, that he operates under his alias "K.C. El," and that Hall is an "expatriate decedent" having no income and no expenses.  The application, however, alleged that the State of New Jersey and townships of Mount Laurel and Willingboro jointly owe Hall $60 million; and

(c)   the Notice itself, executed by Casimir and Hall under extended versions of their aliases, i.e., their aliases preceded by the phrase "Divine Minister Plenipotentiary Noble Ӕmer" and followed by the phrase "All Rights Reserved."  See Docket Entries Nos. 1-3.  The Notice seeks removal of a criminal proceeding currently pending before the Superior Court of New Jersey, Law Division, Burlington Count.  The Notice asserts that the proceeding ensued from a criminal indictment No. 08-04-441-I, which -- according to the Notice -- arose from Plaintiffs' alleged possession of "fraudulent United States Department of State Public Minister Credentials."  See Docket Entry No.1, at 2.  Much like Casimir's civil cover sheet and Hall's in forma pauperis application, the Notice names, as Plaintiffs: (a)

---

[2]   In addition, briefly detailing the allegations made in one of the Marrakush Cases, the Court noted that Plaintiffs' seemingly frequent frictions with various state police officers might have been rooted, inter alia, in Plaintiffs' attempt to present their legally invalid so-called "World Passports" as proper identifications.  See Marrakush Cases, 2009 U.S. Dist. LEXIS 68057, at *72-75, and n.38 (discussing the nature and legal invalidity of the World Passports).

[3]   For the purposes of this "estate," Casimir referred to himself as an "expatriate decedent."

both Casimir and Hall, although utilizing their aliases rather than their legal names; and (b) the "estates" of Casimir and Hall, for the purposes of which both Casimir and Hall are referred to as "expatriate decedents."[4] See id. at 1.

As jurisdictional grounds for removal, Plaintiffs assert Sections 1332, 1441 and 1446 of Title 28. See id. at 2. In addition, Plaintiffs maintain that the substantive basis for removal is the state court's lack of jurisdiction to conduct Casimir and Hall's criminal proceedings, which they deduce from their alleged "expatriation" and their self-assumed "diplomatic" status. See id. at 2-5.

Notably, Plaintiffs' submission does not include any document providing the legal name of any Plaintiff or this Plaintiff's street/post office address. Consequently, the submission at hand fails to comply with the Local Civil Rules. Moreover, the Clerk is without ability to serve Plaintiffs with a copy of this Opinion and accompanying Order. See generally, Docket.

---

[4] It appears that Casimir and Hall asserts that: (a) they both became qualified as "deceased", having passed into the great beyond upon their receipt of World Passports issued in the names of their aliases; (b) Casimir and Hall's physical bodies became qualified as "estates" of these aliases; (c) these aliases became qualified as "expatriates" because they were bearers of the World Passports and because Casimir and Hall docketed so-asserting documents in their New York Action and/or because they recorded statements to that effect in the miscellaneous books of Gloucester, Cumberland and Broward Counties; and (d) these aliases became qualified as foreign diplomats residing in the United States because Casimir and Hall accompanied these aliases with the phrase "Divine Minister Plenipotentiary Noble Æmer." See, generally, Docket Entry No. 1.

C.   **Plaintiffs' Prosecution in the Burlington County**

The public records of the Superior Court of New Jersey reveal that there are two criminal proceedings pending naming Casimir and/or Hall as defendants.[5]  One of these proceedings is based on the indictment asserted in Plaintiffs' Notice, i.e., the indictment No. 08-04-441-I; that proceeding was initiated against both Casimir and Hall on the grounds of their alleged (a) purposeful possession of a controlled dangerous substance, namely, cocaine; and (b) display of fraudulent U.S. Department of State public minister credentials.  With regard to this proceeding, arraignment of Casimir was held on November 17, 2008, while arraignment of Hall was held on May 27, 2008; and their motion challenging the state court's jurisdiction over their criminal prosecution was denied by the state court in April of 2009.

II. **DISCUSSION**

A.   **Lack of Actual Existence, In Forma Pauperis and Pro Se Statuses**

As this Court already detailed to Plaintiffs in its July Opinion, a litigant must actually exist to be a party to a legal matter, see Marrakush Cases, 2009 U.S. Dist. LEXIS 68057, at *96-102, and fictitious aliases cannot be litigants since "a name is not an entity that can initiate a legal suit."  Id. (citations

---

[5]  Copies of Plaintiffs' indictments referenced herein are filed with the Clerk of the Court in connection with this Opinion.

omitted).  Thus, neither "Noble Emer Shyaam M.K. El" nor "Noble Emer K.C. El" can qualify as litigants since these aliases do not appear to be legal names of Casimir or Hall.  Similarly, the "estates" of Casimir and Hall cannot qualify as litigants since Plaintiffs offer no order by a probate court acknowledging the existence of these "estates" and, indeed, it would be surprising had such order been entered because it is well established that the body of a decedent cannot be an estate, or even a part of an estate.  See Greneker v. Sprouse, 263 S.C. 571, 574 (1975) (clarifying that the estate is limited to the real and personal of a decedent); see also In re Estate of Medlen, 286 Ill. App. 3d 860, 864 (Ill. App. Ct. 1997) (explaining that "there is no property right in a dead body, and the body forms no part of the decedent's estate.  The nearest relatives of the deceased [only] have [the] duty to bury the dead" and citing 22A Am. Jur. 2d Dead Bodies §§ 2 and 3 and In re Estate of Fischer, 1 Ill. App. 2d 528, 535 (Ill. App. Ct. 1954)); In re Estate of Moyer, 577 P.2d 108, 110 (Utah 1978) (same); Snyder v. Holy Cross Hospital, 352 A.2d 334, 340 (Md. App. Ct. 1976) (same).  Since neither "Noble Æmer Shyaam M.K. El," nor "Noble Æmer K.C. El," nor either one of the "estates" is an existing person, this matter should be dismissed because no Plaintiff named in this action has standing to sue.  See Marrakush Cases, 2009 U.S. Dist. LEXIS 68057, at *96-102.

In addition, as this Court already explained to Plaintiffs, a juridical person cannot proceed in a legal matter pro se. See Marrakush Cases, 2009 U.S. Dist. LEXIS 68057, at *89-96. Therefore, even if this Court were to treat the "estates" of Casimir and Hall as if they were actually existing, these entities cannot litigate this action without being represented by an attorney duly admitted to practice in this District.  See Hettler v. Kahn, 2002 U.S. Dist. LEXIS 25371 (D. Minn. Dec. 10, 2002).  Moreover, Casimir and/or Hall could not litigate the claims of these "estates" since they are not attorneys duly admitted to practice law.  See id.  Furthermore, even if Hall were to obtain standing to sue by bringing an action in his own name, and even if he were granted in forma pauperis status, he cannot litigate Casimir's claims jus tertii: Casimir and Hall can litigate only their own claims, and each of them must make appearance under his legal name, and each of them must seek and obtain obtain in forma pauperis status or submit the filing fee of $350.  See Hagan v. Rogers, 570 F.3d 146 (3d Cir. 2009).

Finally, if the "estates" are named as Plaintiffs in this matter, the filing fee must be paid (even if proper in forma pauperis applications were submitted by Casimir and Hall under their own names) because these "estates," i.e., juridical entities, cannot proceed in forma pauperis.  See Marrakush Cases, 2009 U.S. Dist. LEXIS 68057, at *89-96; Hettler, 2002 U.S. Dist. LEXIS 25371 (an estate cannot proceed in forma pauperis);

Schneller v. Fox Subacute at Clara Burke, 2006 U.S. Dist. LEXIS
21054, at *4 (E.D. Pa. Apr. 18, 2006) (dismissing, as frivolous,
the action where an estate of deceased sought in forma pauperis
status); see also In re American Mounting & Die Cutting Co., 126
F.2d 419 (8th Cir. 1942) (same); compare In re Butler, 20 F.
Supp. 995, 1001 (D. Va. 1937) (clarifying that, unlike an estate,
a court-appointed executor or administrator of the estate may
proceed in forma pauperis but only if the executor/administrator
represents himself/herself, personally, rather than the estate).

Hence, without reaching the issue of whether Hall might
qualify for in forma pauperis status on the grounds of his
application, the Court finds that Plaintiffs, as a group, cannot
proceed in forma pauperis, and this matter should be dismissed.

**B.   Removal of Plaintiffs' State Proceedings Is Unwarranted**

While Casimir and Hall's failure to execute the Notice in
their legal names or to submit due filing fees (or their proper
in forma pauperis applications) might have warranted dismissal of
this matter without prejudice, the substantive shortcomings of
Plaintiffs' application warrant dismissal with prejudice, due to
lack of jurisdiction.

Here, Plaintiffs assert, as their jurisdictional bases for
removal, 28 U.S.C. §§ 1332, 1441 and 1446.  See Docket Entry No.
1, at 2.  However, neither Section 1332 nor 1441 provide
Plaintiffs with jurisdictional support, since Section 1441
governs removal in *civil* cases, while § 1332 defines grounds for

9

initiation of *new civil* matters in federal courts.  Thus, the
only theoretically relevant jurisdictional basis asserted by
Plaintiffs is 28 U.S.C. § 1446.[6]

---

[6]  In addition to asserted-by-Plaintiffs Section 1446,
another section of Title 28 provides jurisdictional basis for
removal of certain criminal cases, i.e., 28 U.S.C. § 1443.
However, Section 1443(1) provides, in relevant part, that "civil
actions or criminal prosecutions, commenced in a State court may
be removed by the defendant to the district court of the United
States for the district and division embracing the place wherein
it is pending [only if the defendant] is denied or cannot enforce
in the courts of such state a right under any law providing for
the equal civil rights of citizens of the United States, or of
all persons within the jurisdiction thereof."  The Supreme Court
has determined that "a removal petition under 28 U.S.C. § 1443(1)
must satisfy a two-pronged test.  First, it must appear that the
right allegedly denied the removal petitioner arises under a
federal law providing for specific civil rights stated in terms
of racial equality. . . . Second, it must appear . . . that the
removal petitioner is denied or cannot enforce the specified
federal rights in the courts of [the] State."  Johnson v.
Mississippi, 421 U.S. 213, 219 (1975) (internal citations and
quotation marks omitted).  Under the first prong of this test,
"[c]laims that prosecution and conviction will violate rights
under constitutional or statutory provisions of general
applicability or under statutes not protecting against racial
discrimination, will not suffice."  Id.  Since Plaintiffs do not
assert people of other races are excused from prosecution in New
Jersey on the charges of possession of cocaine and presentment of
forged credentials, Plaintiffs fail to meet the first prong of
Section 1443(1).  The second prong of the test "normally requires
that the denial [of the specified federal rights] be manifest in
a formal expression of state law, such as a state legislative or
constitutional provision, rather than a denial first made
manifest at the trial of the case."  Id. (internal citations and
quotation marks omitted). That is, "removal is not warranted by
an assertion that a denial of rights of equality may take place
and go uncorrected at trial."  Georgia v. Rachel, 384 U.S. 780,
800 (1966). Rather, "[r]emoval is warranted only if it can be
predicted by reference to a law of general application that the
defendant will be denied or cannot enforce the specified federal
rights in state courts.  A state statute authorizing the denial
affords an ample basis for such a prediction."  Id.  Here,
Plaintiffs do not name any state statute preventing enforcement
of their federal rights, and this Court is not aware of any such

As Judge Robinson already explained to Plaintiffs in the Delaware I Action (and re-explained in the Delaware II Action), that,

> [u]nder § 1446, a notice of removal of a criminal prosecution shall include all grounds  for such removal. [See] 28 U.S.C. § 1446(c)(2).  A federal district court is to examine promptly the notice of removal of a criminal prosecution.  [See] 28 U.S.C. 1446(c)(4).  If it clearly appears on the face of the notice and any exhibits annexed thereto that removal should not be permitted, the court shall make an order for summary remand. [See id.]  Section 1446(c)(1) provides that a notice of removal of a criminal prosecution shall be filed not later than thirty days after the arraignment in the State court, or at any time before trial, whichever is earlier, except that for good cause shown the United States district court may enter an order granting the defendant or defendants leave to file the notice at a later time.

Delaware II Action, 2009 U.S. Dist. LEXIS 63278, at *3-5; accord Delaware I Action,  2009 U.S. Dist. LEXIS 22800, at *4-5 (stating

---

statute.  Moreover, it is generally presumed that "the protection of federal constitutional or statutory rights [can] be effected in the pending state proceedings, civil or criminal."  Johnson, 421 U.S. at 219-20.

Finally, while Section 1443(2) authorizes removal of state court civil actions or criminal prosecutions "[f]or any act under color of authority derived from any law providing for equal rights, or for refusing to do any act on the ground that it would be inconsistent with such law," 28 U.S.C. § 1443(2), the Supreme Court determined that "the second subsection of § 1443 confers a privilege of removal only upon federal officers or agents and those authorized to act with or for them in affirmatively executing duties under any federal law providing for equal civil rights." City of Greenwood v. Peacock, 384 U.S. 808, 824 (1966). Since neither Plaintiffs themselves nor their allegations fall into this category, Section 1443(2) does not provide a basis of removal of this case.  Consequently, it appears futile to allow Plaintiffs an opportunity to amend their Notice by inclusion of § 1443 as a basis for jurisdiction in this action, since no subsection of the provision can provide Plaintiffs with a viable jurisdictional basis for their state criminal indictment.

11

the same and in, addition, clarifying that "Section 1446(c)(3) specifically provides that the filing of a petition for removal of a criminal prosecution shall not prevent the state court in which the prosecution is pending from proceeding further, except that a judgment of conviction shall not be entered until the petition is denied").

Here, Plaintiffs' arraignments took place on May 27 and November 17, 2008. Plaintiffs' submission was executed on or after August 10, 2009, <u>see</u> Docket Entry No. 1-2, that is, more than fourteen months after Hall's arraignment and almost nine months after Casimir's arraignment. Thus, the Notice is untimely by at least eight or thirteen months. Since Plaintiffs' Notice is facially untimely, and it fails to show good cause for extension of Section 1446 time limit, removal shall be denied on this ground, in addition to those discussed <u>supra</u>.

Finally, Plaintiffs' Notice fails to state substantive grounds for removal, as required by Section 1446(a).[7] Rather, the Notice merely asserts that the state court lacks jurisdiction to conduct Casimir and Hall's criminal proceedings because Casimir and Hall prefer to see themselves as "expatriates" and

---

[7]  In addition, Plaintiff's Notice fails to include "a copy of all process, pleadings, and orders served upon" Defendant in this matter.  The Court, therefore, has no reason to presume that Plaintiffs duly notified any state official connected with Plaintiffs' criminal prosecution.

"diplomats."  None of these arguments states a valid basis for removal.

The issue of the state court's jurisdiction is for the state courts, and the state courts alone, to decide.  See Hamby-Bey v. Bergh, 2008 U.S. Dist. LEXIS 60776, at *4 (E.D. Mich. Aug. 7, 2008) (where the litigant claimed that "Michigan lost it sovereignty, jurisdiction, and rights to try, convict, and sentence under a non-existing State created law," the court ruled that "determination of whether a particular state court is vested with jurisdiction under state law and is the proper venue to hear a criminal case is a 'function of the state courts, not the federal judiciary,'" quoting Wills v. Egeler, 532 F.2d 1058, 1059 (6th Cir. 1976), and citing Wright v. Angelone, 151 F.3d 151, 157-58 (4th Cir. 1998); Rhode v. Olk-Long, 84 F.3d 284, 287 (8th Cir. 1996), Chandler v. Curtis, 2005 U.S. Dist. LEXIS 26398 (E.D. Mich. July 13, 2005), and Groke v. Trombley, 2003 U.S. Dist. LEXIS 5425 (E.D. Mich. April 1, 2003)); see also Smith v. Burt, 2008 U.S. Dist. LEXIS 86767, at *4-5 ( E.D. Mich. Oct. 24, 2008) (same).

Here, in the criminal proceedings Plaintiffs seek to remove, the state court expressly addressed the issue of its own jurisdiction and, in April of 2009, already ruled that it is has proper jurisdictional basis.  This Court is without mandate to second-guess that state court's determination.  Plaintiffs' sole recourse lies ultimately in appealing th the Appellate Division

within the Superior Court of New Jersey and ultimately to the New

Jersey Supreme Court.  Moreover, even if the law to that effect

were otherwise, Plaintiffs' alleged "expatriation" or self-

granted "diplomatic" status would not secure Plaintiffs a

favorable ruling: these facts are inapposite to the state court's

jurisdiction to criminally prosecute Plaintiffs.[8]  A person found

---

[8]  The Court is not entirely clear as to the assertions
comprising Plaintiffs' expatriation and immunity arguments,
since: (a) Plaintiffs seem to focus on an irrelevant fact that
anyone may renounce his/her United States citizenship, but this
fact in no way establishes that Plaintiffs actually expatriated
in accordance with the applicable legal requirements, see, e.g.,
Memorandum Opinion for the Solicitor General of June 12, 2000, at
"02-2 Survey of the Law of Expatriation," the "INS and DOJ Legal
Opinions" sub-directory of LEXIS' "INS General Counsel Opinions"
directory (detailing the elements of expatriation and relevant
presumptions); see also Michael S. Kirsch, The Tax Code as
Nationality Law, 43 Harv. J. on Legis. 375, 381-83 and nn. 26-35
(3006) (elaborating on the test); Marks v. Esperdy, 315 F.2d 673
(2d Cir. 1963)  (the case relied upon by Plaintiffs discussing a
scenario where the plaintiff loses United States nationality as a
result of serving in the armed forces of a country engaged in
hostilities against the United States); and (b) even if the Court
were to hypothesize that Plaintiffs duly expatriated, the fact of
expatriation has no effect on the state court's jurisdiction to
conduct Plaintiffs' criminal proceedings.  See, e.g., Cohen v.
Little Six, Inc., 543 N.W.2d 376 (Minn. Ct. App. 1996) (drawing
distinctions between prosecution of foreign nationals for their
criminal conduct and the immunities of their sovereigns); see
also Cara S. O'Driscoll, The Execution of Foreign Nationals in
Arizona, 32 Ariz. St. L.J. 323 (2000) (detailing numerous penal
prosecutions of foreign nationals in state courts).  Similarly,
even if this Court were to hypothesize that Plaintiffs seek to
remove their criminal proceedings by asserting immunity on the
grounds of their self-granted diplomatic status, Plaintiffs'
Notice has no merit.  See, e.g., Casanova v. Fitzpatrick,  214 F.
Supp. 425 (S.D.N.Y. 1963) (where a foreign national, who was
actually appointed by his government as an attache of his
country's Mission to the United Nations ("UN"), challenged the
jurisdiction to conduct his criminal proceedings, the court found
that any foreign national who was not a diplomatic staff in fact
accredited to and recognized by the United States government,

within the United States cannot somehow exempt himself or immunize himself from the application of state or federal law by declaring himself a non-citizen or a diplomat.

## III. CONCLUSION

For the foregoing reasons, Plaintiffs' in forma pauperis application will be denied.  In its totality, Plaintiffs' Notice of Removal amounts to a sham pleading filed in disregard of well-settled legal principles.  The Court will be directed to docket but not file the Notice.  Plaintiffs' application seeking removal will be denied; this case will be summarily remanded to state court.

An appropriate Order accompanies this Opinion.


**August 31, 2009**            **s/ Jerome B. Simandle**
Date                           JEROME B. SIMANDLE
                               U.S. District Judge

------------------------

could not qualify for either diplomatic immunity under the Law of Nations or under the UN Agreement or its Charter, or for the Supreme Court's exclusive original jurisdiction under Article III of the Constitution or under 28 U.S.C. § 1251).